IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

COMPONEX CORPORATION,

                Plaintiff,                OPINION & ORDER

    v.

                                              13-cv-384-wmc

ELECTRONICS FOR IMAGING, INC.,

                Defendant.

Plaintiff Componex Corporation alleges that defendant Electronics For Imaging, Inc. ("EFI"), infringes two of its patents for printing technology. This opinion is limited to claims relating to the U.S. Patent No. 6,113,059 ("the '059 patent"). As is common in patent cases, the parties have filed cross-motions for summary judgment. Componex seeks summary judgment of infringement. EFI seeks summary judgment of non-infringement. Validity is not at issue. As part of these motions, the parties also ask the court to construe various terms expressed in the claims of the '059 patent. On July 16, 2014, the court held a hearing on claim construction and summary judgment on both patents at issue in this case. For the reasons that follow, the court will grant EFI's motion for summary judgment of non-infringement as to claims 5-22 and will reserve judgment with respect to claims 1-4 pending the parties' submission of a claims chart.

BACKGROUND

**I. The Parties**

Plaintiff Componex is a company located in Edgerton, Wisconsin, that manufactures printing rollers, also known as "idler rollers." As described in more detail

below, Componex manufactures and sells "dead shaft" idler rollers encompassed by one or more claims of the '059 patent under the trademark "WINertia." The President of Componex, Cal Couillard, is the sole name inventor of the '059 patent. Couillard assigned the '059 patent to Engineered Metals Corporation, which subsequently assigned the '059 patent to Componex.

Defendant EFI is a publicly-traded company that sells digital printers and printing technology such as software. (Declaration of Peter Benoit ("Benoit Decl.") (dkt.# 51) ¶ 3.) Among the products EFI offers are several different models of its VUTEk Superwide-format printers. (*Id*.) VUTEk printers are used by specialty print shops to create high-quality, large-format banners, posters and displays. The VUTEk family of printers integrate computerized solutions that optimize print production. The printers typically consist of more than 3,000 parts. (*Id*.) A core component of these printers is the dead shaft idler roller. (*Id*.)

## II. Printing Roller Technology

Printing rollers are routinely used for what is known as "web handling," *i.e.*, the transportation, shaping, and/or storage of thin materials — such as paper, foil, or rolled metal — in a continuous and flexible form. (Declaration of Tim Walker ("Walker Decl.")(dkt.# 56) at ¶ 5.) Central to the '059 patent are what are known as "idler rollers." An idler roller is a roller that rotates by traction, typically created by the moving web as it is pulled or pushed under the roller itself. (*Id*. ¶ 6d.) Idler rollers can be employed in web handling to, among other things, change web direction, prevent droop

2

or flutter, monitor average web tension and provide an applied force to bend the web for guiding.  Idler rollers are referred to as "live shaft" or "dead shaft."  A live shaft roller is one where the shaft is fixed to and rotates with the roller, whereas a dead shaft roller is one where the shaft (also known as the axis) does *not* rotate with the roller. (*Id.* ¶ 6b.)

Rollers can be balanced or unbalanced. Typically, rollers are balanced only in applications requiring high printing speeds. (*Id.* ¶ 15.)  When balancing is needed, it can be done either by the addition of mass to the rotor, by the removal of material, or in some cases by relocating the shaft axis ("mass centering"). Removal of mass can be accomplished by, among other things, drilling, milling, or grinding. (*Id.* ¶ 20.)

## III. The Claims of the '059 Patent and the Core of the Dispute

The '059 patent describes a dead shaft idler roller (*i.e.,* a roller that rotates around a nonmoving shaft or axle) composed in a single piece of two concentrically disposed tubes connected with radial spokes instead of using a thicker single tube. (*See, e.g.,* '059 patent, 2:15-27.)



Figure 1: An Embodiment of Invention from the '059 patent: Idler (54), Balancing Pins (72) & Balancing Lug (32)

As illustrated above, the '059 patent teaches the inclusion of built-in balancing lugs and balancing pins. These features can be removed or inserted after manufacture in order to balance the roller and "eliminate the problem of weights rolling around loose inside the idler" itself. (*Id.*, 2:26-27.) Each of the independent claims in the '059 patent require "balancing lugs"; many of the independent claims also require "balancing pins." (*See, e.g., id.* claims 1-4, 12-22.) Componex asserts infringement of claims 1-4 and 12-22 of the '059 patent. (Pl.'s Br. for Summ. J. (dkt.# 37) 8-9.)

Claim 1 of the patented invention states:

[A] A member suitable for an idler, comprising:

[B] a one-piece unitarily formed tube, wherein said tube comprises, an outer elongate tube having a first outside surface and a first inside surface;

[C] an inner elongate tube having a second outside surface and a second inside surface, wherein said inner elongate tube is concentrically disposed within said outer elongate tube;

[D] a plurality of radially disposed and spaced apart spokes rigidly interconnecting said inner elongate tube to said outer elongate tube;

[E] and a plurality of spaced apart **balancing lugs** having **holding members** for receiving **balancing pins**, wherein said lugs are radially disposed about said member between said outer elongate tube and said inner elongate tube; and

[F] wherein no balancing  lugs are disposed on said second inside surface of said inner elongate tube.

'059 patent, at 8:1-10. (emphasis added.)

With regard to the disputed terms, the parties' preferred constructions are summarized in the following table:

| Disputed Terms | EFI Preferred Construction (Defendant) | Componex Preferred Construction (Plaintiff) |
|---|---|---|
| Balancing lugs | structures which are <u>intended to balance the idler</u> | structures dimensioned and configured to retain a balancing pin |
| Balancing pins | suitably substantially elongate and cylindrical structures <u>which are intended to balance the idler</u> | structures dimensioned and configured to matingly engage with the balancing lugs |
| Holding Members | EFI agrees with Componex that "holding members" refers to the sub-part of a balancing lug that mates with a balancing pin and which is dimensioned and configured to retain a balancing pin. | |
| A distance apart | EFI agrees that the parties do not dispute the meaning of "a distance apart" as used in claims 12, 14, 15, 16, and 18-22. | |

The principal dispute between the parties is over the importance of the adjective "balancing" with respect to an understanding of the terms "lugs" and "pins". While EFI contends that this adjective necessarily reflects the functional limitations underlined above, Componex contends that the claims should be construed solely from a structural perspective. More specifically, Componex argues that the specification in the '059 patent uses the phrase "balancing lug" and the word "lug" synonymously—and that the court should adopt a similar approach.

# OPINION

Analysis of patent infringement is a two-step process: "first, the scope of the claims are determined as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002); *Split Pivot, Inc. v. Trek Bicycle Corp.*, 12-CV-639-WMC, 2013 WL 6564640, at *2-3 (W.D. Wis. Dec. 13, 2013).

## I.     Claim Construction

Claim terms "are examined through the viewing glass of a person skilled in the art." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). This provides an "objective baseline" from which to begin the claim analysis. *Innova, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). The inquiry is assessed at the time of the invention, where the words of a claim "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1313.

Because an "ordinary and customary" meaning may not be readily apparent, and because "patentees frequently use terms idiosyncratically," courts look to the patent specification, the prosecution history, and pertinent extrinsic evidence to construe disputed terms. *Id.* at 1314.  Indeed, the specification is typically considered the "best source for discerning the proper context of the claims." *Phillips*, 415 F.3d at 1315; *United States v. Adams*, 383 U.S. 39, 49 (1966) (it is "fundamental that claims are to be construed in the light of the specification"); *V-Formation, Inc. v. Benetton Group SpA*, 401

6

F.3d 1307, 1310 (Fed. Cir.  2005) (the intrinsic record "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention").

### A.  The Claim Language

EFI contends that Componex's preferred construction should be rejected because it "seeks to wholly ignore" the word "balancing" in the terms "balancing lugs" and "balancing pins." (Def.'s Br. for Summ. J. (dkt.# 71) 10). (*Id.*)  Not surprisingly, EFI relies heavily on the "bedrock principle of claim construction . . . that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312.  The court is inclined to agree.

In drafting the patent, the patentee deliberately used the term "balancing" to define the boundaries of the claims.  Had the patentee intended something different, it could have "prevented this result through clearer drafting." *See Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1337 (Fed.Cir. 2008).  If it was truly meant to have no meaning, the patentee could have deleted the term "balancing" from the claims altogether.  Even ignoring the term, as Componex seeks to do, would only create an equally high hurdle for Componex, because it would broaden the scope of the patent beyond what was claimed at the time of filing.[1]  *Comaper Corp. V Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010); *Innova,* 381 F.3d 1111.

---

[1] By not proposing an alternative construction that gives meaning to the term balancing, Componex has limited its position.

**B. The Specification**

Componex's argument fares no better when looking at the patent's specification. *See Phillips* 415 F.3d at 1316 (It is axiomatic that "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will, in the end, be the correct construction"). The reason is two-fold.

*First*, an overriding objective of the '059 patent is to ensure that the idler is balanced. This objective is drawn from the context of the specification, particularly the background section of the patent. *See* '059 patent, at 1:24-27. There, the inventor identifies problems that existed in the prior art. For example, without sufficient features to secure the weights for balancing, the weights may roll loose, causing damage within the idler itself. *Id.* The patent purports to address this problem by directing the skilled addressee to novel features of the invention, *i.e.*, "balancing lugs" and "balancing pins." These features are depicted in Figure 1 above, where the former accommodates the latter to "eliminate the problem of weights rolling loose inside the idler." *Id.* This is accomplished by ensuring that the balancing pins are secured by the balancing lugs — a functional advantage that would be readily appreciated by one skilled in the art. *Id.*, at 2:22-25.

Hence, the context reinforces EFI's preferred construction. Indeed, without the functional advantage stated in the specification, the adjective "balancing" in each of the disputed terms, holds little (if any) significance. Although Componex argues otherwise, claim terms must be assigned meaning. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (a claim construction that "gives meaning to *all* the

8

terms" is preferred over one that does not).   Because EFI's position supplies meaning to each of the disputed terms and best aligns with the specification, the court has little trouble adopting the preferred construction. *See Phillips,* 415 F.3d at 1315; *see also Bates v. Coe*, 98 U.S. 31, 38 (1878) (the specification aids in construing "the true intent and meaning" of the claim language); *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1306 (Fed. Cir. 2005) (looking to the body of the claim to understand the purpose of the invention); *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1372 (Fed. Cir. 2005)(claims should be construed to reflect the "overriding purpose of the invention"); *Innova,* 381 F.3d at 1118 (finding that the term "[operatively connected] is a general descriptive term frequently used in patent drafting to reflect a functional relationship between claimed components.").

*Second*, and further fortifying EFI's position, are the teachings in the patent that repeatedly refer to the function that is achieved *when the balancing lugs and balancing pins interact*.  Specifically, the inventor speaks of the "built-in balancing feature" achieved by "a novel combination of physical features" in the invention. *See* '059 patent, at 3:65-67. The specification underscores that the overriding purpose of the balancing lugs and balancing pins are for balancing the idler:

> To balance an idler made in accordance with the present invention, one or more rods or pins are inserted into one or more balancing lugs . . . anywhere along the full length of the idler body, *thus providing a very fine tuning of the balancing of the idler body*.

*Id.,* at 6:45-55. (emphasis added).  Reiterated later in the specification is the notion that "[the] balancing lug feature of the idler . . .  permits the idler to be completely set up with the bearings in place, and then balanced." *Id.,* at 6:65-67.  The repeated disclosures in the

specification are not easily ignored for purposes of construing the patent.  The consistent use of the term "balancing" with reference to "lugs" and "pins" leads to the conclusion that the primary purpose of the lugs and pins are for balancing the idler.  This is particularly true when no other function for these features is described in the specification. *See, e.g., Nystrom v. TREX Co.*, 424 F.3d 1136, 1144 (Fed. Cir. 2005) (consistency of language in specification is an acceptable basis for claim construction).

Here, the repeated teachings in the patent provide a frame of reference from which the skilled addressee would construe the claims. Indeed, the context informs the meaning of the disputed terms by linking the adjective "balancing" in the claims to the elimination of the balancing problems identified in the background section of the patent.  Such congruency further supports the adoption of EFI's preferred construction of the disputed terms: balancing lugs and balancing pins are structures built for balancing the idler.  *See Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1333 (Fed. Cir. 2009) (where the inventors "disparaged prior art in their 'background art' section of the specification," they thereby inform the construction of the term wires); *Phillips*, 415 F.3d at 1313 ("In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention").[2]

---

[2] *See also Innovad, Inc. v. Microsoft Corp.*, 260 F.3d 1326-1333 (Fed. Cir. 2001)(rejecting the lower court's construction and focusing instead on the fact that the specification equated the dialer's size with its function: "[t]he dialer unit has no keypad, it is much smaller than existing repertory dialers and thus more portable and suitable for specialty advertising purposes").

## C. The Prosecution History & Prior Art

The prosecution history also squares with the claims language and specification. In order to distinguish the invention from prior art, Componex argued to the Patent Office that the "balancing lug" is "a structure which is intended to balance the idler," which appears directly at odds with the construction it now proffers to this court.[3]  For the reasons that follow, Componex will be bound by its prior representations. *See Ballard Medical Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1359 (Fed. Cir. 2001) ("An inventor may use the specification and prosecution history to define what his invention is and what it is not — particularly when distinguishing the invention over prior art"); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379-80 (Fed. Cir. 1998) ("[b]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do *not* cover"); *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998) (pointing to "[n]otice [as] an important function of the patent prosecution process, as reflected by the [patent] statute itself").

As is often the case, Componex achieved allowance of the claims in the '059 patent, including the disputed terms, only after three prior rejections by the Patent Office.  In seeking to traverse one office action, Componex distinguished U.S. Patent No. 4,425,694 (the "Somerville" reference) on grounds that it did not teach a less intensive idler balancing.   In particular, Componex represented to the Patent Office that the balancing problem was first addressed by *its invention*, which provided a built-in feature

---

[3] The inventor, Couillard, assigned the '059 patent to Engineered Metals Corporation, which subsequently assigned the '059 patent to Componex.  While Componex was not, therefore, the original patentee, it will be referred to as "patentee" for sake of simplicity.

that included "balancing lugs accommodating balancing pins in mating fashion." (Walker Decl. Ex. B (dkt.#56-2) 97-99.)

Even with this representation, the examiner was not convinced and rejected the claims in light of prior art.  (*Id*., 108-109.)  Componex then made an even more definitive argument in an attempt to distinguish the invention and traverse the examiner's rejection. In restating its position, Componex declared: "Clearly the Applicant has defined the term *'balancing lug'* in the specification to be a structure which is *intended to balance the idler*." (*Id.,* at 131 (emphasis added).)  This declaration was also supported by arguments to distinguish the invention from the prior art.  The following statements with respect to U.S. Patent No. 3,3889,715 (the "Lilja" reference) and U.S. Patent No. 4,737,046 (the "Inabata" reference) are illustrative:

> As generally understood, claims are to be interpreted in light of the specification. Certainly, the forks of Lilja are not intended to balance the pipes disclosed therein which are for enclosing pipe insulation, nor are the fins of Inabata intended to balance the platen rolls as described therein.

(*Id.*)  Once these declarations were submitted, the claims were then allowed and the patent issued.

Componex contended at oral argument that none of these declarations to the Patent Office are relevant to construction of the claims because they related to earlier claims that were later cancelled.  As EFI pointed out at oral argument and in earlier briefing, however, that argument carries little weight.  (*See* Def.'s Br. for Summ. J. (dkt.# 93) 23-24.). Most fundamentally, the earlier claims were not cancelled.  Specifically, "claims 1,2,4, and 10 were simply rewritten as claims 28-31" (claim 28 being the claim that was later renumbered to claim 1). (Walker Decl. Ex. B (dkt.#56-2) 136.)  Moreover,

the whole point of prosecution history estoppel is to prevent what Componex is seeking to do here:  ignore the actual context in which the prosecutor and the examiner used the terms that were later reduced to the language of the issued patent.  *Digital Biometrics, Inc.*, 149 F.3d at 1347.

Here, the terms "balancing lugs" and "balancing pins" were consistently used throughout correspondence between the patentee and the examiner, and were understood to have functional limitations.  While there was chopping and changing of some claim language, the term "balancing lugs" remained constant throughout.  It was never deleted from the patent.  Indeed, once functional meaning was attributed to the term (to distinguish the invention from prior art) the balancing lugs became a core aspect of the invention.  This is only reinforced by the repetition of the *same* terms in each and every claim of the patent.  And contrary to Componex's position, there is also nothing in the claims, specification or prosecution history to suggest that the term "balancing lugs" *should* be given meaning other than the functional definition that the court adopts in this case.  *See Phillips*, 415 F.3d at 1314 ("claim terms are normally used consistently throughout the patent").  Thus, even if not a basis for prosecutorial estoppel, the prosecution history is wholly consistent with the court's claim construction.

In this respect, Componex's position is no different than the patentees in *Ballard* and *Spectrum.*  In those cases, the Federal Circuit identified inconsistencies between what was stated before the Patent Office for the purpose of obtaining a patent and what was stated before the court for the purpose of claim construction.  In both instances, the Federal Circuit held the applicants to their prior statements before the Patent Office. *See*

13

*Ballard,* 268 F.3d at 1359; *Spectrum,* 164 F.3d at 1379-80.  So, too, here: a clear disavowal of claim scope which is grounded in the prosecution history of the '059 patent is binding.

Accordingly, the court finds that the definition of balancing lug, made in order to traverse rejections by the patent examiner and avoid prior art, cannot now be abandoned by Componex in order to expand the scope of its patent beyond what was previously claimed. To do so would not only turn Componex's position before the Patent Office on its head, it would distort the public notice function of the prosecution process that the statute seeks to preserve.  *See Phillips,* 415 F.3d at 1315; *see also Kinik Co. v. Int'l Trade Comm'n,* 362 F.3d 1359, 1365 (Fed. Cir. 2004) ("The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history.")

### D. The Extrinsic Evidence

Finally, the court finds that extrinsic evidence further supports EFI's position, especially when read in light of the intrinsic record as set forth above.  Extrinsic evidence consists of all evidence external to the patent, including inventor testimony, dictionaries, and learned treatises.  *Phillips* 415 F.3d at 1317.  This evidence may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history. *Id.*  Extrinsic evidence may also demonstrate the state of the prior art at the time of the invention to "aid the court in construction of the patent." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (quoting *Brown*

14

*v. Piper*, 91 U.S. 37, 41, 23 L.Ed. 200 (1875)).

While extrinsic evidence is not dispositive of the court's construction, it serves to underscore the flaws in Componex's preferred construction here. This is borne out by statements of the inventor, who confirmed during deposition testimony that the purpose of the balancing lugs in the invention is "to balance the rolls [*i.e.*, the idlers]." (Couillard Dep. 51:18-20, attached to Labar Decl. as Ex. 2.) The inventor further opined that the presence of such balancing lugs is the key distinction between the invention and pre-existing idlers in the prior art. (*Id.* 97:21-98:5.) This *extrinsic* evidence — drawn directly from the inventor — distinguishes the "old" subject matter from the "new" subject matter "to aid the court in the construction of the patent." *Markman*, 52 F.3d at 979. Tellingly, it also confirms the conclusion that the sole purpose of the balancing lugs is to balance the idler, thereby preventing loose weights from rolling around inside the idler as identified in the prior art.[4]

---

[4] In *Curtiss-Wright Flow Control Corp. v. Z & J Technologies GmbH*, 563 F. Supp. 2d 1109, 1117 (C.D. Cal. 2007), U.S. District Judge Otero reiterated that claim construction is a purely legal determination even when extrinsic evidence is relevant to claim construction, stating:

> According to the Federal Circuit, extrinsic evidence is only used for the Court's understanding of the patent. *Cybor Corp. v. FAS Techs*., 138 F.3d 1448, 1455 (Fed.Cir.1998) (en banc). When the Court construes the true meaning of the claims with the aid of extrinsic evidence, according to the Federal Circuit, the Court is not making factual findings or crediting certain evidence over other evidence. According to the Federal Circuit, while the trial judge may seek understanding outside the patent proper, from relevant texts and materials, and from experts in the art, none of this involves 'fact-finding' in the sense of the traditional fact-law dichotomy.

Whether this will continue to be good law remains to be seen when the Supreme Court reconsiders *Cybor's* holding in *Teva Pharmaceuticals USA, Inc. v. Sandoz Inc.*, 723 F.3d 1363, 1369 (Fed. Cir. 2013), *cert. granted*, No. 13–854, 2014 WL 199529 (U.S. Mar. 31, 2014). *Cf. Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1282-83 (Fed. Cir. 2014).

### E.  Functional v. Structural Claims

Notwithstanding  the need to supply meaning to the adjective "balancing" — or the fact that the specification, prosecution history and extrinsic evidence all cut against its position — Componex still contends that the court cannot adopt a functional interpretation because the claims in the patent are worded in structural terms. Specifically, Componex contends that because claims 1-4, 13, 17, 19, 21 and 22 are directed towards "apparatus" claims, EFI's construction impermissibly injects a use limitation into claims written in structural terms.  (Pl.'s Opp Br. (dkt.# 75) 24-25.) Indeed, this was the focus of Componex's oral argument with respect to the '059 patent.

On first blush, Componex's argument would seem to have some merit.  *See Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1090 (Fed. Cir. 2009) ("absent an express limitation to the contrary, any use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim"); *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002) (same).  On closer inspection, however, the argument fails for a variety of reasons.  As an initial matter, the proposition in *Paragon* does not apply where, as here, statements of intended use *exist in the record* and "the applicant clearly and unmistakably relied on those uses or benefits to distinguish prior art." *Catalina,* 289 F.3d at 808.   Componex completely ignores this aspect of both the *Paragon* and *Catalina* decisions.

In so doing, Componex not only ignores the context supplied by the specification, which is tethered to the claims themselves, but would circumvent the entire prosecution

---

Fortunately, the result does not change here whatever the ultimate holding in *Teva*, since the extrinsic evidence points overwhelmingly to the same construction.

history.  Both sources provide evidence that distinguishes the invention from the prior art.  While addressed earlier in this opinion, an additional representation to the patent examiner is illustrative:

> As noted in the *subject specification, the balancing lugs are used for holding balancing pins so that the tubing material can be balanced without the problem of weights rolling around loose inside the idler*. [Neither] <u>*Lilja et al. nor Skegin make any reference to using balancing lugs to balance an idler*</u>. The forks  of Lilja et al. enable outer portions to be removably attached to the pipe. Certainly, the forks  of Lilja et al. cannot be considered the same as the claimed balancing lugs because the forks could not hold balancing pins as taught by the subject application. With reference to Skegin, the channel sections and plates interlock by means of mating longitudinal bosses. Certainly, the bosses projecting from the inside surface near cannot be considered the same as the claimed balancing lugs . . .  as taught by the application.

(Walker Decl. Ex. B (dkt.#56-2) 116)(emphasis added).

These kinds of detailed responses to the Patent Office reveal the specific boundaries that Componex voluntarily carved out from the prior art to obtain the '059 patent.  In particular, the first sentence of the passage highlights the problems of weights rolling around loose inside the idler.  The patentee then states that the Lilja and Skegin references do not use balancing lugs and balancing pins to balance an idler.  In *Catalina's* language, these statements are "clearly and unmistakably" relied upon to distinguish the "uses or benefits" of these features over the prior art.  289 F.3d at 808.

The present case is analogous to *DeSena v. Beekley Corp.*, 729 F. Supp. 2d 375 (D. Me. 2010).  In *DeSena*, the functional limitation at issue related to X-ray markers "used" for podiatry purposes.  The district court held that because of efforts by the patentee to distinguish the patent from the prior art in both the specification and the prosecution history, the patent office adopted the construction subsequently advocated by the accused infringer.  *Id.* at 381-84.

17

Here, too, the patentee went to great lengths to define the boundaries of the patent relative to the prior art, thereby narrowing the scope of the patent to avoid invalidity. Because of this, the court has little choice but to cabin even the so-called structural claims with this functional limitation consistent with the prosecution history and the patent's specification.[5] Any construction other than this would not only be inconsistent with the purpose of the patent, but would distort how a person of ordinary skill in the art would understand the invention in light of the prior art. *Id.*; *accord Bass Pro Trademarks, LLC v. Cabela's, Inc.*, 485 F.3d 1364, 1369 (Fed. Cir. 2007) ("Throughout the prosecution, the applicant relied on the vest to distinguish the combination from the devices in the references."); *see also Purdue Pharma L.P. v. Endo Pharm. Inc.,* 438 F.3d 1123, 1136 (Fed. Cir. 2006) ("Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution. This may occur, for example, when the patentee explicitly characterizes an aspect of his invention in a specific manner to overcome prior art.").[6]

---

[5] Because of these statements, and because the Patent Office relied on the statements to allow for issuance of the patent, the public notice concerns raised in *Paragon* are not relevant in this case.

[6] Componex also argues that prior to the final claim-set being issued, the Patent Office deleted the phrase, "intended to balance the idler" from claims 1-4. Componex contends that because this phrase was removed from claim 1, it should have no bearing on how the phrase "balancing lugs" should be construed. Componex accuses EFI of not providing this aspect of the prosecution history, which sheds light on the issue of balancing. But in levelling this allegation against EFI, Componex ignores its similar failings. At page 149 of the prosecution history, the patent attorney for Componex notes that the phrase ("intended to balance the idler") has been deleted from claim 1. (Walker Decl. Ex. B (dkt.#56-2) 149.)  In that same correspondence, the patent attorney expressly states that the deletion has "no bearing on the [allow ability] of the claim" and that the "deletion of the functional language has no effect on the Examiner's stated reasons for allowance." (*Id.*)  Accordingly, he concludes, "[t]he foregoing changes do not substantively affect the scope of the allowed claims and merely address procedural matters to put the claims in better condition for issuance."  (*Id.*)  At a minimum, this correspondence neutralizes Componex's argument that EFI

## II.    Infringement

While the court has adopted EFI's construction, it will only grant EFI's motion for summary judgment of non-infringement with respect to claims 5-22 based both on:  (1) the absence in the factual record of use of balancing pins by EFI, except for idlers sold to it by Componex; and (2) as confirmed at the hearing held on July 16, 2014, the fact that balancing pins are required for each of those claims.[7]   At this juncture, the court will reserve judgment with respect to claims 1-4 until after the filing of the parties' chart listing the claims and products that remain at issue.  (Dkt #15 at 4.)

If the parties cannot file a joint chart after making a good faith effort to do so, the court will accept two separate documents of the areas in dispute with a *very* brief explanation and citations to the factual record supporting their respective positions.

---

used the prosecution selectively.  Moreover, while the claims did "chop and change" during the course of the prosecution history, the correspondence between the Patent Office and the patent attorney centered on the issue of the balancing lugs and whether that feature should be read narrowly in light of the prior art (*i.e.,* with a functional limitation to balance the idler). Given that phrase "balancing lugs" was not deleted, and was defined in functional terms in the prosecution history to distinguish prior art, the patentee will be held to its statements made before the Patent Office. *See* discussion, *supra*.

[7] EFI's motion is granted as to both literal infringement and infringement under the doctrine of equivalents. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) ("If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents."). As to claims 5-22, Componex cannot prevail under either theory.  Not only did Componex fail to (1) rebut EFI's motion, which sought summary judgment on both literal and equivalency theories, but it (2) failed to offer any evidence with respect to EFI's use of balancing pins or an arguable equivalent to pins.  With respect to the second point, EFI's failure to argue features that were similar to pins precludes an equivalents theory because of claim vitiation. *Id.* at 1356-57 (vitiation applies when "the evidence is such that no reasonable jury could determine two elements to be equivalent.").

ORDER

IT IS ORDERED that:

1. Defendant EFI's construction of the disputed terms, as described in this opinion, are adopted by the court.

2. Defendant EFI's motion for non-infringement (dkt. 41) is GRANTED with respect to claims 5-22 as to the '059 patent.

3. The court reserves judgment on claims 1-4 and plaintiff Componex's motion for infringement (dkt 36) as to the '059 patent pending submission of the parties' claims chart and, if necessary, respective explanations.

Entered this 18th day of July, 2014.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge