IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

COMPONEX CORPORATION,

                              Plaintiff,                              OPINION & ORDER

        v.                                                                   13-cv-384-wmc

ELECTRONICS FOR IMAGING, INC.,

                              Defendant.

        Plaintiff Componex Corporation alleges that defendant Electronics For Imaging,
Inc. ("EFI"), infringes two of its patents for printing technology.  The court has already
addressed Componex's infringement claims on summary judgment with respect to U.S.
Patent No. 6,685,076 ("the '076 patent").  (Dkt. #152.)  This opinion addresses
Componex's claims of infringement of U.S. Patent No. 6,113,059 ("the '059 patent")
and follows the court's earlier claim construction with respect to that patent issued on
July 18, 2014.  (Dkt. #119.)  The parties have also cross-moved for summary judgment
on infringement of the '059 patent.  For the reasons that follow, the court will partially
grant EFI's motion for summary judgment because most of its products do not use lugs
for balancing the roller.  Because EFI concedes that there are disputed issues of fact with
respect to its use of lugs to balance at least two of its products, however, the case must
proceed to trial.  For that reason, this opinion will also address lingering issues related to
allegedly infringing products that survived summary judgment.

BACKGROUND

## I.  The Parties

Plaintiff Componex is a company located in Edgerton, Wisconsin, that manufactures printing rollers, also known as "idler rollers."  As described in more detail below, Componex manufactures and sells "dead shaft" idler rollers encompassed by one or more claims of the '059 patent under the trademark "WINertia."

Defendant EFI is a publicly-traded company that sells digital printers and printing technology, including software.  (Declaration of Peter Benoit ("Benoit Decl.") (dkt.# 51) ¶ 3.)  Among the products EFI offers are several different models of its VUTEk Superwide-format printers.  (*Id*.)  VUTEk printers are used by specialty print shops to create high-quality, large-format banners, posters and displays.

## II. Printing Roller Technology

Printing rollers are routinely used for what is known as "web handling," *i.e.*, the transportation, shaping, and/or storage of thin materials -- such as paper, foil, or rolled metal -- in a continuous and flexible form.  (Declaration of Tim Walker ("Walker Decl.") (dkt.# 56) at ¶ 5.)  Central to the '059 patent are what are known as "idler rollers." An idler roller is a roller that rotates by traction, typically created by the moving web as it is pulled or pushed under the roller itself.  (*Id*. ¶ 6d.)  Idler rollers can be employed in web handling to, among other things, change web direction, prevent droop or flutter, monitor average web tension and provide an applied force to bend the web for guiding.  Idler rollers are referred to as "live shaft" or "dead shaft."  A live shaft roller is one where the

shaft is fixed to and rotates with the roller, whereas a dead shaft roller is one where the shaft (also known as the axis) does *not* rotate with the roller. (*Id.* ¶ 6b.)

Rollers can also be balanced or unbalanced.  Ordinarily, rollers are balanced only in applications requiring high speed printing.  (*Id.* ¶ 15.)  When balancing is needed, it can be done either by the addition of mass to the rotor, by the removal of material, or in some cases by relocating the shaft axis ("mass centering").  Removal of mass can be accomplished by, among other things, drilling, milling, or grinding.  (*Id.* ¶ 20.)

## III. The Material Claims of the '059 Patent

The '059 patent describes a dead shaft idler roller (*i.e.,* a roller that rotates around a nonmoving shaft or axle) composed in a single piece of two concentrically disposed tubes connected with radial spokes instead of using a thicker single tube.  (*See, e.g.,* '059 patent, 2:15-27.)



Figure 1: An Embodiment of Invention from the '059 patent: Idler (54), Balancing Pins (72) & Balancing Lug (32)

As illustrated above, the '059 patent teaches the inclusion of built-in "balancing lugs" (32) and "balancing pins" (72).  These features can be removed or inserted after

3

manufacture in order to balance the roller and "eliminate the problem of weights rolling around loose inside the idler" itself.  (*Id.* 2:26-27.)  Each of the independent claims in the '059 patent require "balancing lugs"; many of the independent claims also require "balancing pins."  (*See, e.g., id.* claims 1-4, 12-22.)   Componex asserts infringement of claims 1-4 and 12-22 of the '059 patent.  (Pl.'s Br. for Summ. J. (dkt.# 37) 8-9.)

> Claim 1 is illustrative of the patented invention:
>
> [A] A member suitable for an idler, comprising:
>
> [B] a one-piece unitarily formed tube, wherein said tube comprises, an outer elongate tube having a first outside surface and a first inside surface;
>
> [C] an inner elongate tube having a second outside surface and a second inside surface, wherein said inner elongate tube is concentrically disposed within said outer elongate tube;
>
> [D] a plurality of radially disposed and spaced apart spokes rigidly interconnecting said inner elongate tube to said outer elongate tube;
>
> [E] and a plurality of spaced apart **balancing lugs** having **holding members** for receiving **balancing pins**, wherein said lugs are radially disposed about said member between said outer elongate tube and said inner elongate tube; and
>
> [F] wherein no balancing lugs are disposed on said second inside surface of said inner elongate tube.

'059 patent, at 8:1-10 (emphasis added).


## OPINION

An analysis of patent infringement requires a two-step process:  "first, the scope of the claims are determined as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial

4

equivalent, in the accused device." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002); *Split Pivot, Inc. v. Trek Bicycle Corp*., 12-CV-639-WMC, 2013 WL 6564640, at *2-3 (W.D. Wis. Dec. 13, 2013).  Since the court previously construed the claims in question, this opinion will focus solely on a comparison of claims to the allegedly infringing products.

In its earlier claim construction opinion, this court granted EFI's motion for summary judgment with respect to claims 5-22 based upon Componex's concession that there was no evidence of balancing pins in EFI's products.  (Dkt # 119 at 19.)

> While the court has adopted EFI's construction, it will only grant EFI's motion for summary judgment of non-infringement with respect to claims 5-22 based both on:  (1) the absence in the factual record of use of balancing pins by EFI, except for idlers sold to it by Componex; and (2) as confirmed at the hearing held on July 16, 2014, the fact that balancing pins are required for each of those claims.   At this juncture, the court will reserve judgment with respect to claims 1-4 until after the filing of the parties' charts listing the claims and products that remain at issue.

(*Id*.)  Accordingly, what the court now decides is whether EFI's products infringe claims 1-4.  Relatedly, the court will also address which products may proceed to trial.  EFI Products, and the corresponding Part Numbers, found in Componex's "Chart Listing Claims and Products at Issue," will be used for reference purposes in this opinion.  (Dkt #124.)

Componex bears the burden of proving infringement by a preponderance of the evidence*. See Laitram Corp. v. Rexnord Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  Accordingly, Componex must come forward with evidence of infringement when put in dispute on summary judgment.  *See* Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett*, 477

U.S. 317, 322–23 (1986).  With respect to most of the allegedly infringing products, Componex has not met its burden.

## I.  EFI Products

To determine whether EFI's remaining products infringe, the court begins with its construction of the term "balancing lugs," a term central to claims 1-4.[1]  EFI's preferred construction was that balancing lugs meant "structures which are intended to balance the idler," arguing that the patent should be construed from the perspective of its purpose or intended use.  (Dkt # 119 at 5.)  Componex's preferred construction was "structures dimensioned and configured to retain a balancing pin."  (*Id*.)

In this way, EFI obviously sought to import a functional limitation into the claims, while Componex's construction was solely structural. (*Id.* at 5.) This functional/structural debate was addressed in the court's claim construction opinion, particularly in Section I.E. Ultimately, the court rejected Componex's preferred construction based on (1) claim language, (2) the specification, (3) the prosecution history and (4) extrinsic evidence. Support for EFI's construction, which the court adopted, was best depicted in Componex's own representations to the Patent Office, made to avoid a rejection on invalidity grounds.[2]  The following representation is illustrative:

---

[1] The term "balancing pin" was also disputed, but Componex conceded there was no evidence of balancing pins being used in any of the allegedly infringing products.

[2] Of course, this would have led to the question whether the claims were valid in light of similar prior art.  Though, Componex managed to avoid this question in prosecuting the '059 patent before the Patent Office by adding functional limitations. Indeed, on the court's review of the Lilja and Skegin references, these references are not just similar but near, structurally identical.

As noted in the *subject specification, the balancing lugs are used for holding balancing pins so that the tubing material can be balanced without the problem of weights rolling around loose inside the idler*. [Neither] *Lilja et al. nor Skegin make any reference to using balancing lugs to balance an idler*. The forks of Lilja et al. enable outer portions to be removably attached to the pipe [including end caps]. Certainly, the forks of Lilja et al. cannot be considered the same as the claimed balancing lugs because the forks could not hold balancing pins as taught by the subject application. With reference to Skegin, the channel sections and plates interlock by means of mating longitudinal bosses. Certainly, the bosses projecting from the inside surface near cannot be considered the same as the claimed balancing lugs . . . as taught by the application.

(Walker Decl. Ex. B (dkt.#56-2) 116) (emphasis in the original).

Based on this and other representations to the Patent Office, this court went on to find that:

The patentee . . . states that the Lilja and Skegin references do not use balancing lugs and balancing pins to balance an idler. In *Catalina's*[3] language, these statements are "clearly and unmistakably" relied upon to distinguish the "uses or benefits" of these features [in the '059 patent] over the prior art. 289 F.3d at 808.

(Dkt #119 at 16.)

Since detailed responses to the Patent Office reveal specific boundaries Componex *voluntarily carved out* from the prior art to obtain the '059 patent, these same boundaries provide the framework to determine the infringement question here. Indeed, the functionality limitation supplies meaning to a tortured prosecution history that included three Patent Office rejections. Thus, the functional limitation is critical to understanding the parameters of the patent based on the prosecution history. *See Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1366 (Fed. Cir. 2010) ("The use of comparative and

---

[3] *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002); *see also Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1090 (Fed. Cir. 2009) ("absent an express limitation to the contrary, any use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim").

functional language to construe and explain a claim term is not improper. A description of what a component does may add clarity and understanding to the meaning and scope of the claim."); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1111 (Fed. Cir. 2000) ("We note that there is nothing wrong with defining the dimensions of a device in terms of the environment in which it is to be used.").

EFI contends that a substantial number of its products do not infringe because their lugs do not balance the idlers as claimed by the '059 patent.  In support, EFI relies on a declaration from Paul Duncanson, Manager of Mechanical Architecture at EFI, who avers:

> It is my understanding that Componex has asserted that the rollers depicted in drawings for part numbers 45059073, 45066280, 45073176, 45073177, 45073453, 45078972, 45079680, 45081334, 45086866, A60525-A, A76213-A, and/or 45074570 allegedly infringe on U.S. Patent No. 6,113,059 ("the '059 Patent"). I am familiar with the part numbers in question and know that EFI does not balance the rollers depicted in the drawings for those part numbers.
>
> I understand that Componex has referred to what it calls "balancing lugs" to identify certain C-shaped features on its rollers. To the extent these C-shaped features are contained in rollers corresponding to the part numbers identified above in Paragraph 3, EFI uses these C-shaped features to screw end caps onto the rollers. *EFI does not use these C-shaped features to hold balancing pins or otherwise to balance the rollers.*

(Declaration of Paul Duncanson ("Duncanson Decl.") (dkt. #52) 1) (emphasis added).)

Componex supplies no evidence to controvert Duncanson's declaration with respect to any of these part numbers.[4]  In particular, there is *no evidence* that EFI uses the

---

[4] The only evidence that Componex did proffer on infringement as to these Part Numbers was a report by Jerald Brown. (Brown Expert Report. (dkt.# 70) 12-22.)  But that report was not based upon the court's construction of the claims.  Instead, it was based on Componex's structural construction, which the court rejected. There are, however, two Part Numbers in dispute and not noted in Duncanson's declaration -- Part Number 45071308 and Part Number 45071323. EFI

C-shaped balancing lugs in these products to hold balancing pins or otherwise balance the rollers.

On the contrary, in its opposition (dkt. #75 at 24) and reply (dkt. #105 at 11) briefing, Componex does not challenge any of the asserted facts in Duncanson's declaration.  Instead, Componex argues that its claims were apparatus claims and that "apparatus claims cover what the device is" (its structure), "not what the device does" (its function).  *Paragon*, 566 F.3d at 1090.   Accordingly, Componex argued that because EFI's products infringed apparatus claims, any "utilization" argument made by EFI was "irrelevant."  (Dkt. #105 at 10) ("whether EFI uses lugs on its accused roller to balance the roller is irrelevant").  In so arguing, Componex sought to analogize the balancing lugs to a toaster:  "if you use a toaster as a doorstop, [i]t's still a toaster [regardless of its many uses]." *Id.*

The court rejected this very argument in its previous claims construction opinion, finding Componex's reliance on the general rule in *Paragon* unpersuasive.  Instead, the court found an express exception applied.  In *Paragon*, the Federal Circuit explained that: "absent an express limitation to the contrary, any use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim." *Paragon*, 566 F.3d at 1090. Because there was an express (functional) limitation in the prosecution history of the '059 patent (limiting the claims), this court found that

---

concedes that there are disputed issues of fact regarding whether lugs are used for balancing in these products.

the general rule did *not* apply.   Rather, the claims were limited to uses of lugs for balancing the idler.

Moreover, to the person skilled in the art, the lack of evidence that the use of EFI's lugs are used to balance EFI's rollers would indicate that the '059 patent does not read on those products.[5]   Indeed, a review of the specification and the prosecution history, relative to the evidence in suit, establishes as much.   *See Application of Barr*, 58 C.C.P.A. 1388, 444 F.2d 588, 595, 170 U.S.P.Q. 330 (1971) ("The real issue ... is whether the recital sets definite boundaries on the patent protection sought -- that is, whether those skilled in the relevant art can determine what the claim does or does not read on.").

As foreshadowed in the claim construction opinion, the present case is also analogous to *DeSena v. Beekley Corp.*, 729 F. Supp. 2d 375 (D. Me. 2010).   In *DeSena*, the functional limitation at issue related to X-ray markers "used" for podiatry purposes.   The district court held that because of efforts by the patentee to distinguish the patent from the prior art in both its specification and prosecution history, the Patent Office adopted a functional construction, upon which the accused infringer subsequently relied.   *Id.* at 381-84.  Like the '059 patent, the patent at issue in *DeSena* suffered a tortured prosecution history before issuance of the claims.   Ultimately, the patentee could not prove literal infringement because there was no evidence that the defendant used the markers for podiatry purposes. *Id.* at 381-84.

---

[5] Those Part Numbers are:  45059073, 45066280, 45073176, 45073177, 45073453, 45078972, 45079680, 45081334, 45086866, A60525-A, A76213-A, and/or 45074570. (Declaration of Paul Duncanson ("Duncanson Decl.")(dkt # 52) at 1).

Admittedly, *DeSena* is relatively unusual in finding functional limitations in what are typically known as apparatus claims.  This also makes the infringement question here relatively unusual in that the patent does not follow a typical means-plus-function format under 35 U.S.C. § 112, ¶6.   Indeed, *DeSena* is one of the few cases finding no infringement because the defendant was using a device for a purpose not covered by the patent, or in other words, the accused device did not literally follow the functional limitation expressed in the claims.  *See DeSena*, 729 F. Supp. 2d at 384-85 ("The public record of the prosecution history, therefore -- the official record that is created in the knowledge that its audience is not only the patent examining officials and the applicant, but the interested public -- demonstrates that [the patentee] consistently and repeatedly distinguished the prior art by limiting use of its '106 patent *to* foot markers and podiatry ...  Because [the defendant] sells its markers only for mammography, not for foot x-rays, there is no infringement as I construe the claims.").[6]

Notwithstanding the functional limitation placed on the '059 patent, Componex apparently continues to contend that each of the Part Numbers listed above literally

---

[6] In all the other cases found, courts considered whether functional limitations in apparatus claims were valid, not whether they have been infringed. Nevertheless, these cases *do* support the proposition that defining claims by their function, outside the 35 U.S.C. § 112, ¶ 6 context, is proper. *See Hill-Rom Servs., Inc. v. Stryker Corp.,* 755 F.3d 1367, 1374-75 (Fed. Cir. 2014) ("defining a particular claim term by its function is not improper" and "is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of [35 U.S.C. § 112(6) ]"); *Microprocessor Enhancement Corp. v. Texas Instruments Inc.,* 520 F.3d 1367, 1375 (Fed. Cir. 2008) ("claims are not necessarily indefinite for using functional language . . . [and such language] may be used to limit the claims without having the means-plus-function format"); *In re Schreiber,* 128 F.3d 1473, 1478 (Fed. Cir. 1997) ("a patent applicant is free to recite features of an apparatus either structurally or functionally"); *In re Swinehart,* 58 C.C.P.A. 1027, 439 F.2d 210, 212, 169 USPQ 226, 228 (CCPA 1971) ("there is nothing intrinsically wrong with defining something by what it does rather than what it is in drafting patent claims").

infringe the '059 patent.  *See* Componex's Chart Listing Claims and Products at Issue. (Dkt # 124.)  But Componex does not explain how this can be so.[7]

Certainly, this is at least arguably true for two Part Numbers that purportedly use lugs for the purposes of balancing the rollers, but Componex's literal infringement theory with respect to the other Part Numbers was predicated on a *structural* likeness between EFI's products and the patent -- not a functional likeness -- just as EFI's defense depended on the court finding a functional limitation.[8]  Put another way, other than EFI's concessions with regard to these few products, Componex offers no proof that EFI's products contain "balancing lugs" (*i.e.,* "structures which are intended to balance the idler").[9]

---

[7] Componex's claim construction charts comparing the products with limitations in the patent do not include the court-construed functional limitations. (Dkt # 37 at 14-15). Any non-infringement opinion that depends upon a rejected claim construction is obviously inadequate as a response to a motion for summary judgment for infringement based on the adopted claim construction. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009); *cf. Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224, n.2 (Fed. Cir. 2006) (affirming exclusion of testimony of expert based on incorrect claim construction); *Personalized User Model, L.L.P. v. Google Inc.*, No. CV 09-525-LPS, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014) ("expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact").

[8] Now looking at the infringement issues here through the "viewing glass" of a functional perspective, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005), Componex's fortune fails for all but a few remaining products.  Indeed, because of the way in which each party argued its case on summary judgment, each must have realized that their fortune on infringement was always going to *rise and fall* on whether their preferred claim construction position was adopted.

[9] The fact that EFI has conceded that some of its products are used for balancing purposes goes to show that a line can be drawn between those products that infringe and those that do not.  But in ascertaining that line, a plaintiff (here, Componex) must proffer proof of products that fall on the infringing side.

This case could well have been different had Componex submitted proof of an infringing use.  For example, the case may have been different if there were advertisement stating either explicitly or implicitly that EFI's lugs permitted balancing.  Perhaps infringement may have also been proven with evidence of inducement by EFI to its customers to use the lugs for balancing purposes.  But Componex does not offer proof to support either of these theories with respect to any of the alleged infringing products.  On the contrary, Componex has been steadfast in advocating its structural interpretation with the exception of two Part Numbers.  Having already lost that debate at claims construction, Componex cannot meet its burden on infringement as to those Part Numbers referred to in the Duncanson declaration.

Accordingly, the court will grant partial summary judgment to EFI on Componex's claim that EFI allegedly infringed the '059 patent with respect to all but two part numbers: Part Number 45071308 and Part Number 45071323.[10]  *See Teleflex*, 299 F.3d at 1323 (patentee must prove that "all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device.").

## II. Implied License

EFI raised a separate, albeit poorly developed, issue on summary judgment by asserting that certain number of its allegedly infringing products were purportedly covered by an implied license from Componex.  In light of the court having now substantially narrowed the products still at issue under both patents, it is at best unclear

---

[10] To be clear, with respect to the Part Numbers in Duncanson's declaration, EFI's motion is granted as to both literal infringement and infringement under the doctrine of equivalents.  *See* Claims Construction Opinion (dkt. #119), p. 19, n7.

whether EFI still maintains that to be the case.  This uncertainty is further complicated by EFI's statements that it has "*primarily*" purchased products from Componex.  *See McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 921 (Fed. Cir. 1995) ("[A]n authorized sale of a patented product places that product beyond the reach of the patent.").  Before the court reconciles this issue, the parties will be directed to file fresh charts listing claims and products at issue, similar to those the parties have filed at Dkt. #123-124.  Given the overlap in several Product Numbers that may no longer be at issue in this case (either because of the infringement findings in this opinion or the invalidity findings in the '076 opinion), these tables would assist the court to ascertain those products that remain at issue in this case.  While Componex goes some way to explaining which products might not arguably be subject to an implied license (dkt. #105 at 6-7), the parties should further indicate in their claim charts whether an implied license would apply to some or all of the product(s) manufactured.  In both regards, before finalizing their claim charts, the parties will be expected to discuss the implications of this opinion and the remaining products in dispute, as well as what facts are disputed and undisputed with respect to the sourcing of idler rollers.[11]

## III. Notice Requirement and Damages

EFI also moves for partial summary judgment as to damages. EFI argues that any damages awarded must be reduced because of Componex's failure to comply with the

---

[11] Componex's Motion to Supplement the Summary Judgment Record with the Supplemental Declaration of Cal Couillard by Plaintiff Componex Corporation (Dkt #125) will be addressed once the fresh claim charts have been filed.  For ease of reference, the Product Numbers referred to in this Couillard declaration should also be noted in the claim charts as being sourced from this declaration.

notice requirements of 35 U.S.C. § 287(a).  That statute mandates that actual notice must be given before damages can be awarded. 35 U.S.C. § 287; *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).  More specifically, to recover damages for patent infringement, a patentee must establish that the alleged infringer had actual notice of the infringed patent and the product alleged to infringe. 35 U.S.C. § 287(a).  Moreover, pursuant to section 287(a), "a party that does not mark a patented article is not entitled to damages for infringement prior to actual notice" to the alleged infringing party that its actions infringe the patent. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009).

Here, Componex concedes that it did not properly mark its products as patented. Instead, Componex asserts that EFI was afforded actual notice by way of oral communication and contemporaneous emails.  Specifically, Componex argues that EFI received actual notice of infringement of the '059 patent in late 2009 by virtue of an oral communication between Darcy Perona, an employee at Componex, and Roberta Berecz, an employee at EFI.  In her declaration, Ms. Perona states:

> I recall that, in 2009, I had communications, including a phone conversation, with Roberta Berecz, who was at the time a buyer for EFI. Ms. Berecz informed me that EFI was attempting to purchase 10-inch cantilever rolls from another vendor.
>
> In response to that information, I informed Ms. Berecz that Componex held patents on both the tubing incorporated into the cantilevered rolls -- which Componex refers to as Winertia tubing -- and the cantilevered roller design. I told Ms. Berecz that, because of the patents, it seemed to me that EFI could not purchase from other vendors.

(Perona Decl. (dkt # 83) ¶¶ 4-5.)  As further evidence of this conversation, Componex points to an internal EFI email in which Ms. Berecz wrote to another EFI employee

15

(Peter Benoit) that Componex is "claiming patent protection on the cantilever design." (Dkt # 86-12.).

Even though the court fully credits both pieces of evidence for summary judgment purposes, they are not enough to satisfy the notice requirements of § 287(a).  In *Amsted* the Federal Circuit held that actual notice requires an "affirmative communication of a specific charge of infringement by a specific accused product or device."  24 F.3d at 187. "Under this standard, general letters referring to the patent and including an admonishment not to infringe do not constitute actual notice." *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008) (emphasis added); *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 926 F. Supp. 2d 1100, 1113-1114 (N.D. Cal. 2013) (actual notice requires identification of specific patents and the infringement of them by a specific product).[12]

Here, Componex's only pieces of evidence (whether considered in combination or in isolation) fall well short of the actual notice requirements.  *First*, even when Perona's statement and Berecz's email are taken together, nowhere is there evidence of a specific reference to the patent number, much less to the specific infringing product or claim. The kind of general notice Componex offers has already been rejected by the Federal

---

[12] Componex cites one case that finds actual notice does not require identification of the specific patent at issue.  *See Ceeco Mach. Mfg., Ltd. v. Intercole, Inc.*, 817 F. Supp. 979, 986 (D. Mass. 1992). However, the persuasive value of the *Ceeco* decision has been substantially diluted.  As an initial matter, *Ceeco* predates the Federal Circuit's controlling authority in *Amsted* by two years.  *Ceeco*'s suggestion that identification of a specific patent is not required for actual notice has also been criticized by courts since *Amsted*.  *See Samsung Elecs. Co., Ltd.*, 926 F. Supp. 2d at 1114 (finding that *Ceeco*'s "reasoning is unpersuasive, and has never been adopted by the Federal Circuit."). Finally, whether or not the notice requires explicit identification of the specific patent at issue, it certainly requires "a specific charge of infringement by a specific accused product" after *Amsted*.

Circuit.  *See Minks*, 546 F.3d at 1376 (general letters referring to the patent and including an admonishment not to infringe do not constitute actual notice); *Amsted*, 24 F.3d at 186-87 (patentee did not identify accused product but rather urged recipient to not copy or make a competing product).

*Second*, the oral statement by Perona -- "because of the patents, it seemed to me that EFI could not purchase from other vendors" -- is self-serving and indefinite.  This, too, amounts to an admonishment not to infringe, rather than actual notice of infringement, which similarly fails to trigger the statute.  *Minks*, 546 F.3d at 1376.  At most, the statement poses a question not only for Berecz (the EFI recipient), but Perona herself.  As such, it is not even a definitive statement, much less a specific charge of infringement of the '059 patent by a specific product.

Because Componex has failed to come forward with evidence that it provided EFI with actual notice of a specific charge of infringement of the '059 Patent by a specific product, the court will grant EFI's summary judgment motion as to damages incurred before the date on which this lawsuit commenced.

## IV. Willful Infringement

Finally, EFI argues that summary judgment should be granted on Componex's claim for willful infringement and enhanced damages pursuant to 35 U.S.C. § 284.  More specifically, EFI argues that a claim of willful infringement cannot survive in light of its objectively reasonable infringement defenses.

A finding of willful infringement requires more than a showing of mere negligence. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007).  To establish willful

infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371. "If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer." *Id.*; *see also Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012). Importantly, "the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law." *Bard* 682 F.3d at 1008. Thus, "[a] defendant may get off the hook under *In re Seagate* by identifying an objectively reasonable defense, even if the court ultimately disagrees with the defense." *Riddell, Inc. v. Schutt Sports, Inc.*, 724 F.Supp.2d 981, 999–1000 (W.D.Wis. 2010).

Here, a substantial number of EFI's products -- identified in Duncanson's declaration -- will not proceed to trial in light of functional limitations in the patent's claims. For those products where EFI has conceded disputed issues of fact with respect to infringement, the question is obviously a closer one. First, on this record, the court is unable to assess the strength of plaintiff's infringement claims and whether defendant's other defenses may be viable.

Second, even if otherwise infringing, a finding of willful infringement may depend on the strength of the implied license defense. *See Bard*, 682 F.3d at 1008; *Fujitsu Ltd. v. Belkin Int'l, Inc.*, Case No. 10–cv–03972–LHK, 2012 WL 4497966, at *39 (N.D. Cal. Sept. 28, 2012) ("Where fact-finding is necessary, trial courts generally reserve

18

willfulness until after a full presentation of the evidence on the record to the jury."). Accordingly, the court will reserve on whether a willfulness claim may proceed to trial until it has received the parties' claims charts and considered the merits of their motions *in limine*.

ORDER

IT IS ORDERED that:

1. Defendant EFI's motion for summary judgment on Componex's claims of non-infringement and willful infringement (dkt. #41) is GRANTED in part with respect to claims 1-4 of the '059 patent consistent with the opinion above and is otherwise DENIED.  Plaintiff's cross-motion on the same issues is DENIED.

2. Defendant EFI's motion for damages (notice) (dkt. #41) is GRANTED in part with respect to claims 1-4 of the '059 patent consistent with the opinion above.

3. On or before Friday, November 14, 2014, the parties are DIRECTED to file updated charts listing claims and products that remain in issue consistent with the court's claim constructions and summary judgment opinions.  To the extent the parties are unable to agree, the parties may also file a trial brief on or before Tuesday, November 18, 2014, addressing what, if any, dispute remains with respect to the facts and law of those individual claims and products, particularly with respect to any assertion of an implied license.

Entered this 4th day of November, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge